IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 1:16 CR 96 |
| | ) |
| STEVEN FREDERIKSEN, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S POSITION ON SENTENCING**

COMES NOW the Defendant, Steven Frederiksen, and hereby states his position with respect to sentencing in this case. The defendant has no objections to the Presentence Report or the Probation Office's calculation of the sentencing guidelines. The defendant's Offense Level has been properly calculated at 43, with a Criminal History Category I, resulting in a guidelines recommendation of Life in prison.

Notwithstanding the guidelines, and the government's request for a sentence of twenty-five years (300 months), the defendant respectfully requests a sentence of 15 years (180 months).

## SENTENCING FACTORS

1. <u>The Nature and Circumstances of the Offense, and the History and Characteristics of the Defendant.</u>

The offense conduct in this case involved the defendant contacting teenage girls using various internet-based social media platforms, for the purpose of engaging in sexually related communications with them. The communication including sending and receiving videos of masturbation. The defendant also sent some pornographic material involving prepubescent victims to another individual via an instant messaging application. (Statement of Facts, PSR 6-8).

The evolution and nature of Mr. Frederiksen's offending behavior is detailed in the Psychosexual Evaluation and Risk Assessment prepared by Dr. Anita Boss, Psy.D.. (See Attachment A, hereinafter "Eval"). Frederiksen initially began using the internet to find adult sexual partners to facilitate what could be described as his serial infidelity. (Eval, p 8). He also used the internet as a source of pornography. He reported that in the early phases of looking at internet pornography, he was "not seeking anything more than just normal sex acts," but he eventually became attracted to more "taboo forms of pornogrphy" including some involving minors and pre-pubescent victims, such as is described in the Statement of Facts in this case. (Eval, p 9).

The frequency and intensity of Mr. Frederiksen's online sexual activity gradually increased over the years. (Eval, 10). He stated to Dr. Boss that "the majority of his online activities, and all of his in-person encounters, involved heterosexual adult females." (Id). He admitted, however, that he also began having online sexual interactions with minors approximately three to five years ago. (Id). By the time of his arrest last year, Mr. Frederiksen was engaging in online sexual activity an astonishing two to four hours per day. (Id.)

Significantly, the defendant is well aware that he has a serious problem, and has expressed a strong desire and motivation to participate in treatment to address it. (Eval, 10-11). Despite experiencing strong feelings of shame and guilt as a result of his behavior, he expressed feeling unable to stop engaging in the behavior without getting help. (Id). While Mr. Frederiksen is not yet at the point where he can explain the reasons behind this conduct, the psychological testing conducted by Dr. Boss does provide some insight. Interpreting the results of Mr. Frederiksen's MMPI-2, she stated:

> The test results were consistent with individuals who engage in maladaptive behaviors (e.g., risk-taking, sexuality, and/or substance abuse) that are intended to reduce anxiety. There is typically a cycle that begins with anxiety and tension, which the individual then tends to relieve through some type of acting-out behavior, which provides temporary distraction and escape but then induces guilt, which causes further anxiety, which then perpetuates the cycle. Remorse and guilt feelings are typically short-lived, and so they do not provide a deterrent for the self-defeating or

3

>self-destructive behavior. Nevertheless, individuals with similar test results tend to have a strong sense of right and wrong, as well as a desire for social acceptance that often promotes socially desirable behavior. This creates an intense conflict within the individual, thus creating more anxiety and perpetuating the cycle.

(Eval, 11-12).

It is important to note here that none of this is put forth as an excuse for Mr. Frederiksen's offending behavior. There are obviously many people who experience anxiety who do not seek to engage in online sexual activity with under age girls. For Mr. Frederiksen however, understanding the root causes of his behavior is one of the first steps towards being able to control and change that behavior, which is something he is very motivated to do. (Eval 13, 14; PSR 9).

The defendant has led an otherwise exemplary life. The youngest of three children reared in a stable midwestern family, he has spent the entirety of his adult life in service to his country. After completing high school in 1991, he was admitted to the U.S. Military Academy at West Point, from which he graduated in 1995 with a degree in Engineering Physics. (PSR 14). He has served as an officer in the United States Army ever since. He went on to obtain a Master's Degree in Nuclear Engineering from the University of Tennessee in 2007. (Eval 4). Prior to his arrest in this case he was working at the Defense Intelligence Agency in the field of nuclear counterproliferation. (Eval 4). He has attained the rank of Lieutenant Colonel in the Army, although there is currently a prosecution pending under the Uniform Code of Military Justice for the acts giving rise to these offenses. (PSR 16).

Mr. Frederiksen has been married twice, with both marriages suffering from his infidelity. Nevertheless, he remains a devoted father of three children: Steven Jr., 20; Ashley, 18; and Jacob, 16. (PSR 14; Eval 4).

The defendant chose to enter a guilty plea in this case even though he was fully aware that the Guidelines would recommend a life sentence. His primary motivations for doing so were (1) to accept responsibility for his actions; and more importantly (2) to spare his victims the experience of having to come to Virginia and testify in front of a jury about the facts of this case.

2(A). <u>The Need For The Sentence To Reflect The Seriousness of The Offense, To Promote Respect For The Law, and To Provide Just Punishment.</u>

The defendant fully comprehends the seriousness of his conduct, and the damage he inflicted on the teenage girls with whom he was communicating. He is deeply ashamed and remorseful, and he understands and agrees that he deserves significant punishment for his actions and their consequences. However, it is always important to maintain some sense of perspective and proportionality when considering just how *much* punishment should be imposed. The guidelines treat this conduct as among the worst of all possible criminal offenses, yet this defendant did not kill anyone. This was not a violent offense causing permanent physical damage. This was not a rape or other type of forcible sexual assault. It was not child molestation. The defendant did not have actual in-person contact -

sexual or otherwise - with any of his victims. He submits that a sentence of fifteen years would constitute an appropriate punishment in this case.

2(B). <u>The Need For The Sentence To Afford Adequate Deterrence</u>.

A sentence of fifteen years in prison would be sufficient to provide adequate deterrence to others who might be tempted to engage in similar behavior. For a similarly situated individual who considers engaging in such conduct, but stops to think about the consequences - including the likelihood of getting caught along with the probable punishment - the difference between fifteen and twenty five years in prison is not likely to be the deciding factor in their decision-making process. Fifteen years would be more than enough deterrence for any sane and rational person.

2(C). <u>The Need For The Sentence To Protect The Public From Further Crimes of This Defendant</u>.

There is probably no more important factor for the Court to consider in arriving at the appropriate sentence than its responsibility to protect the community. Therefore, it is important to assess as accurately as possible the defendant's risk to reoffend if and when he is released back into society. In its Position on Sentencing, the government sites a 2002 Congressional finding for the proposition that "studies have shown that sex offenders are four times more likely

than other violent criminals to re-commit their crimes." (USA Position on Sentencing, p. 7). A report published by the Department of Justice's "Sex Offender Management Assessment and Planning Initiative" states this finding somewhat differently:

> As part of their study, Langan, Schmitt, and Durose (2003) conducted a comparative analysis of recidivism among sex offenders and non-sex offenders. Findings were based on the 3-year postrelease offending of 9,691 sex offenders and 262,420 non-sex offenders released from prison in 1994. *The analysis revealed that once released, the sex offenders had a lower overall rearrest rate than non-sex offenders (43 percent compared to 68 percent), but their sex crime rearrest rate was four times higher than the rate for non-sex offenders (5.3 percent compared to 1.3 percent).* Similar patterns are consistently found in other studies that compare sex offender and non-sex offender recidivism (see, e.g., Sample & Bray, 2003; Hanson, Scott, & Steffy, 1995). (emphasis added)

(For full report: http://www.smart.gov/SOMAPI/sec1/ch5_recidivism.html). In other words, convicted sex offenders are more likely to commit *sex* crimes than other offenders, but the overall recidivism rate for sex offenders is significantly lower than for other crimes. (See also, DOJ Bureau of Statistics report on same study: https://www.bjs.gov/content/pub/press/rsorp94pr.cfm).

The subject of sex-offender recidivism has been extensively studied over the years, resulting in the creation of several actuarial instruments designed to quantify the risk assessment of different offenders based on various factors which research has demonstrated to be relevant to rates of sex-offender recidivism. Among

7

recognized experts in the field, "the Static 99/R is the most widely used used sex offender risk assessment instrument in the world." (http://www.static99.org/). As part of her evaluation and risk assessment, Dr. Boss reported that Mr. Frederiksen's score on the "Static-99R was one, placing him in a low risk category." She goes to to explain that "between 95 and 97 sexual offenders [out of 100] with similar scores would *not* be convicted of a new sexual offense" within five years in the community. (emphasis added) (Eval 13).

Dr. Boss also noted that several factors which have been associated with an elevated risk to re-offend are absent in Mr. Frederiksen's case, including the lack of prior criminal history, the lack of psychopathic traits or mental and personality disorders, and his willingness to accept responsibility rather than minimizing his involvement. Additional factors, such as his high degree of motivation for treatment, his level of education, and his stable employment history also mitigate against the risk of reoffending for Mr. Frederiksen.

Considering all of the relevant factors in his case and drawing upon all of her expertise and experience in this field, Dr. Boss's conclusion is that "Mr. Frederiksen's risk for committing a future sex offense can be characterized as low."

Considering Dr. Boss's opinion along with all the tools available to the probation office to supervise and monitor Mr. Frederiksen when he is released, a sentence in excess of the statutory mandatory minimum 15 years would not be necessary to protect the public from future crimes from this defendant.

2(D). <u>The Need for the Sentence To Provide The Defendant With Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.</u>

Mr. Frederiksen is clearly in need of psychological counseling, including sex offender treatment, and he has a high level of motivation to participate in such treatment. There are currently two levels of sex-offender treatment offered in the Federal Bureau of Prisons -- Residential, and Non-Residential. (See, [https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp](https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp)). Placement determinations are based on risk to reoffend. Based on his risk evaluation (Eval, 12-15), including a low score of 1 on the Static-99R, Mr. Frederiksen would most likely be eligible for only the less-intensive, "Non-Residential Sex Offender Treatment Program," which consists of outpatient groups that meet 2-3 times per week for a period of 9-12 months. He will be in need of further sex-offender treatment when he is released.

3. <u>The Kinds of Sentences Available</u>.

The options available to the Court in this case are limited. The court is required to impose at least the fifteen year mandatory minimum term of imprisonment.

4. <u>The Sentencing Guidelines.</u>

The sentencing guidelines in this case recommend imprisonment for Life. Pursuant to *United States v. Booker*, 543 U.S. 220, 258-260 (2005) and its progeny, however, a sentencing court must consider *all* of the factors enumerated in 18 U.S.C. § 3553 when determining the appropriate sentence. While the guidelines are one of the factors that must be considered, there is no presumption that the guidelines recommendation is reasonable. The Supreme Court has emphasized that the guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors set forth [in 18 U.S.C. § 3553]. *Nelson v. United States*, 555 U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009).

> Although the sentencing judge is obliged to consider all of the sentencing factors outlined in Sec. 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness.

*United States v Jones*, 460 F. 3d 191 (2nd Cir. 2006).

While the sentencing court must begin its analysis by correctly calculating the advisory sentencing range, the court is then free in light of the other statutory sentencing factors to impose an entirely different sentence, even if it simply disagrees, based on the § 3553(a) sentencing factors, with the Sentencing Guidelines' "rough approximation" of the appropriate sentence for any given case. *Rita v. United States*, 551 U.S. 338, 351 (2007).

The overriding principle that must guide a sentencing court's exercise of discretion in arriving at an appropriate sentence in every case is the sentence must be "sufficient, but not greater than necessary," to accomplish the purposes of the factors listed in 18 U.S.C. § 3553(a)(2). For the reasons stated in Sections 2 (A-D) of this memo, the defendant submits that a sentence of fifteen years satisfies that requirement.

5. <u>The Need to Avoid Unwarranted Sentencing Disparities.</u>

A review of some similar cases recently prosecuted in this District indicates that it is not unusual for defendants to receive sentences substantially below the range advised by the guidelines. For example, in *United States v Battle*, 1:15cr274-CMH, the defendant manipulated and deceived at least five minor boys into believing he was a teenage girl so he could obtain pictures of their genitals. He actually knew two of the boys in real life. The defendant also had hundreds of

child pornography videos on his computer, including videos of toddlers being sexually abused. Mr. Battle elected to have a jury trial, and was convicted on four counts of production of child pornography, one count of attempted coercion and enticement of a minor, as well as two counts of receipt of child pornography and one count of distribution of child pornography. The Guidelines recommendation was Life in prison, but he was sentenced to 300 months. In *United States v. Hitosis*, 1:15-cr-172-TSE, the Guidelines recommendation was 360-Life for participation in a conspiracy in which children were lured from social media sites into adult chat rooms, and then tricked into sending pornographic images and videos of themselves to adults who were posing as other children. The defendant was sentenced to 216 months. In *United States v. Friedel*, 1:14-cr-383(TSE), the defendant received a sentence of 192 months despite that fact that he not only caused a 15 year-old girl to send him pornographic images of herself, he then had numerous recorded sexual encounters with her. Mr. Friedel also caused four other minors to create and send childpornography, and then used those images while threatening and blackmailing the minors into engaging in further similar conduct. The Guidelines range in that case was 262-327 months.

      The instant case is distinguishable in some important respects. Mr. Fredriksen did not have any actual sexual contact with any of the victims. Unlike

some of the cases mentioned above, he chose not to put his victims through the ordeal of testifying in front of a jury. He not only has an unblemished record prior to these offenses, he has also spent approximately half of his life in service to this country.

## CONCLUSION

For all of the reasons stated above, Mr. Frederiksen submits that a sentence of fifteen years would be sufficient, but not greater than necessary, to accomplish the sentencing goals embodied in 18 U.S.C. § 3553(a)(2).

                                                   Respectfully submitted,

                                                   Steven Frederiksen
                                                   By Counsel

By:

_____/s/_____
Michael C. Sprano, Esq.
The Sprano Law Firm, LLP
10603 Judicial Drive
Fairfax, VA 22030
703-591-1332
msprano@spranolaw.com


_____/s/_____
Nader Hasan
Law Offices of Nader Hasan, P.C.
10603 Judicial Drive
Fairfax, Virginia 22030

703-865-5590
nhasan@naderhasan.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

James E. Burke IV, Esq.
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314

By:
_____/s/_____
Michael C. Sprano, Esquire
The Sprano Law Firm, LLP
10603 Judicial Drive
Fairfax, VA 22030
703 591 1332
703 591 1515 (f)
msprano@spranolaw.com

IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 1:16 CR 96 |
| ) | |
| STEVEN FREDERIKSEN, ) | |
| ) | |
| Defendant. ) | |

# ATTACHMENT A

# FILED UNDER SEAL